**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Dawn Hansen, et al., | Case No.: 2:21-cv-00135-JAD-DJA |
| Plaintiffs | |
| v. | **Order Granting Defendants' Motions to Dismiss, Denying Defendants' Motion to Declare Plaintiffs Vexatious Litigants, and Closing Case** |
| Judge Kathleen E. Delaney, et al., | |
| Defendants | [ECF Nos. 4, 8, 15, 18, 22, 24, 26] |

Dawn Hansen, Christopher Hansen, and Nicholas Hanson sue a slew of state-court judges, a state court, and counsel for their alleged violations of federal and state law during an eviction dispute.[1] The defendants move to dismiss on largely jurisdictional and procedural grounds.[2] The state-court judges, Eighth Judicial District Court, and state-court hearing master argue that the Eleventh Amendment immunizes them from suit, the plaintiffs improperly seek review of state-court judgments, and they are absolutely immune from personal liability for the unlawful conduct described in the complaint. The defendant attorneys argue that they are private actors who cannot be held responsible for constitutional violations and that they are protected by the litigation privilege. Those lawyers also seek to have the plaintiffs declared vexatious litigants[3]—a request that the magistrate judge recommends that I grant[4] and to which the plaintiffs object.[5]

---

[1] *See generally* ECF No. 1 (complaint).

[2] ECF Nos. 4, 8, 15, 26 (motions to dismiss).

[3] ECF No. 18 (motion to declare the plaintiffs vexatious litigants).

[4] ECF No. 22 (report and recommendation).

[5] ECF No. 24 (objection to report and recommendation).

I find that this court lacks subject-matter jurisdiction to hear the plaintiffs' claims against the state entities under both the Eleventh Amendment and the *Rooker-Feldman* doctrine;[6] the judicial defendants are immune from suit; and the plaintiffs do not and cannot allege that the private attorneys acted under color of state law, thus precluding their liability for plaintiffs' constitutional claims. Because I find that no tenable federal claims exist, I decline to exercise supplemental jurisdiction over any remaining state-law claims. So I grant the defendants' motions to dismiss without leave to amend. And because I dismiss this case, I deny as moot the defendants' request to deem these plaintiffs vexatious litigants.

## Background[7]

This suit started in Las Vegas Justice Court, when attorneys Michael Bohn, Adam Trippiedi, and Nikoll Nikci filed a summary eviction complaint against the Hansens,[8] seeking to have them removed from their clients' rental property.[9] But the Hearing Master for that court, defendant David Brown, determined that he lacked authority to judge the dispute because of the complexity of the claims at issue.[10] So he dismissed the complaint without prejudice and advised the evicting parties that Nevada's district court would be a better forum.[11] In response, Bohn filed a complaint in the Eighth Judicial District Court, to be heard by defendant Judge Kathleen Delaney, seeking an eviction order, equitable relief, restitution, attorneys' fees, and

---

[6] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983).

[7] This is merely a summary of facts alleged in the complaint and should not be construed as findings of fact.

[8] Hanson appears to reside at the property, but the suit was not filed against him because the defendants claim he was not on the lease. ECF No. 8 at 2.

[9] ECF No. 1 at ¶¶ 48, 85.

[10] *Id.* at ¶¶ 98, 127, 165, 167.

[11] *Id.* at ¶ 98, 124–27.

unspecified monetary damages.[12]  Though it's unclear whether and to what extent Judge Delaney

resolved the parties' claims,[13] she issued a number of orders, including a temporary writ of

restitution and a finding that she had jurisdiction to hear the matter.[14]  The plaintiffs filed a

number of disqualification motions against Judge Delaney, which were denied by defendant

Chief Judge Linda Bell and Judge Mark Denton, prompting the plaintiffs to also seek to

disqualify those judges.[15]

The plaintiffs maintain that the administration of those eviction and disqualification

disputes has been rife with constitutional, federal, and state-law violations.  Though their

allegations are far-reaching and convoluted, they primarily complain of six discrete acts.  First,

they allege that Hearing Master Brown dismissed the initial eviction action in violation of state

law, which apparently required him to either adjudicate the dispute or transfer it to Nevada state

court.[16]  Second, they maintain that Judge Delaney committed multiple procedural and

substantive due-process violations by failing to dismiss the eviction suit for lack of subject-

matter jurisdiction, "coach[ing]" the defendant attorneys during hearings, failing to timely

schedule and provide notice of hearings, improperly granting restitution orders, and failing to

adequately participate in her own disqualification hearing.[17]  Third, they assert that defendant

Judge Suzan Baucum failed to properly oversee or train Hearing Master Brown, contributing to

---

[12] *Id.* at ¶¶ 6, 9, 49, 68, 168; *see also* ECF No. 1, Ex. 1.

[13] *Id.* at ¶ 196 ("To the date of this filing that case continues without a judge to hear the case but [the p]laintiff's counterclaims were not dismissed in any part.") (emphasis omitted).

[14] *Id.* at ¶¶ 107, 227–28.

[15] *Id.* at ¶¶ 225, 231, 245.

[16] *Id.* at ¶¶ 382–84.

[17] *Id.* at ¶¶ 109, 179, 185, 195, 233, 238, 240, 242, 404

the due-process violations.[18]   Fourth, they claim that Judges Bell and Denton acted without

jurisdiction when they ruled on the plaintiffs' disqualification motions, unfairly retaliating

against them for reporting Judge Delaney's procedural abuses.[19]   Fifth, they allege that the

attorneys, including C. Edward Whitney, who drafted their lease, conspired with the government

defendants to deprive them of their constitutional rights by filing various complaints, motions,

briefs, and requests with the courts.[20]   And sixth, they claim that the sum of these acts violates

their religious beliefs, which charge them to "protect and defend" the "sacred" United States

Constitution.[21]

   All told, the plaintiffs' 102-page complaint asserts twenty-five causes of action against

ten defendants.  They sue Judges Delaney, Bell, and Denton, and Hearing Master Brown in their

personal and official capacities; Judge Baucum in her official capacity only; attorneys Bohn,

Trippiedi, Nikci, and Whitney, each of whom allegedly acted "under the 'color of law'"; and the

Eighth Judicial District Court, seeking injunctive and declaratory relief, as well as damages, for

violations of the Nevada and U.S. Constitutions "not dependent upon any amendment"; the Fair

Housing Act; the Religious Freedom and Restoration Act; Nevada's civil RICO Act; and for

retaliation, malicious prosecution, and deprivation of access to counsel.[22]   And they bring

constitutional claims for violations of the First, Second, Fourth, Fifth, Sixth, Seventh, and

Fourteenth Amendments under 42 U.S.C. §§ 1981, 1982, 1985, and 1986.[23]

---

[18] *Id.* at ¶¶ 136–38, 387, 410.

[19] *Id.* at ¶¶ 209, 211, 215, 218–19, 342, 392–93.

[20] *Id.* at ¶¶ 14, 177, 183–84, 188, 216, 394–96.

[21] *Id.* at ¶¶ 156, 292, 297.

[22] *Id.* at ¶¶ 339, 363

[23] *Id.* at ¶ 7.

**Discussion**

The Eighth Judicial District Court; Judges Delaney, Bell, Denton, and Baucum;  and Hearing Master Brown (the state-government defendants) move to dismiss the complaint on jurisdictional and immunity grounds, asserting that (1) the Eleventh Amendment bars plaintiffs' official-capacity claims, (2) the *Rooker-Feldman* doctrine precludes exercising subject-matter jurisdiction over claims tethered to legal errors made in state court, and (3) judicial immunity insulates the judges and hearing master from any personal-capacity liability for the plaintiffs' alleged injuries.  For their part, the attorneys argue that (1) they are not state actors and cannot be held liable for any alleged constitutional violations, and (2) the litigation privilege shields their courtroom conduct from liability.  The plaintiffs respond that the defendants' conduct robbed them of any immunity that is generally accorded state actors.  And they maintain that the attorneys' conduct constituted a criminal conspiracy with the state defendants, opening them to liability for the alleged constitutional violations.

**I.      The plaintiffs cannot state claims against the state-actor defendants.**

**A.      The Eleventh Amendment's bar**

The state-government defendants contend that they enjoy immunity from suit under the Eleventh Amendment.  "The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state,"[24] and it generally "bars suits [that] seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies."[25] Suits "against state officials that seek[] retroactive money damages, to be paid from the state

---

[24] *Brooks v. Sulphur Springs Valley Elec. Co-op.*, 951 F.2d 1050, 1053 (9th Cir. 1991).

[25] *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

treasury, [are] barred by the [E]leventh [A]mendment as a suit against the state."[26]  Conceding

that the state-actor defendants are facially protected by the Eleventh Amendment's jurisdictional

bar, the plaintiffs ask me to apply an exception to exert jurisdiction, arguing that (1) Congress

has abrogated Nevada's immunity to suit; (2) Nevada has waived its immunity by consenting to

suit; and (3) they seek prospective, injunctive relief under the *Ex parte Young* doctrine.  None of

these bases provides them an avenue to sue these defendants in their official capacities.

### 1.    *Neither Congress nor Nevada has abrogated state immunity.*

As the plaintiffs concede, Nevada has explicitly refused to waive its immunity to suit

under the Eleventh Amendment for these claims,[27] and Congress has not abrogated the state's

immunity under the RFRA, the Fair Housing Act, or 42 U.S.C. § 1981, 1982, 1983, 1985, or

1986.  Section 1981 guarantees the equal right to "enforce contracts, sue, be parties, give

evidence, and to the full and equal benefit of all law and proceedings."  Section 1982 accords all

citizens the right to "inherit, purchase, lease, sell, hold, and convey real and personal property."

While § 1983 imposes liability on state actors who deprive a person of his or her civil rights, the

Supreme Court has held that neither a state agency nor a state official is a "person" under § 1983

liable to official-capacity suit.[28]  Section 1985 prohibits conspiracies to deny anyone his or her

civil rights and § 1986 creates a cause of action against anyone who fails to prevent such

conspiracies.  Neither the RFRA nor the Fair Housing Act makes "unmistakably clear" that

---

[26] *Blaylock v. Schwinden*, 862 F.2d 1352, 1353 (9th Cir. 1988).

[27] Nev. Rev. Stat. § 41.031(3) ("The State of Nevada does not waive its immunity from suit conferred by Amendment XI of the Constitution of the United States.").

[28] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64–66 (1989) ("That Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance . . . .").

Congress "unequivocally"[29] intended to abrogate states' sovereign immunity. The Supreme Court and circuit courts have consistently held that Congress did not waive Eleventh Amendment sovereign immunity under any of these statutes.[30] So I decline to find that the waiver exception to sovereign immunity applies to the plaintiffs' claims, and I thus cannot exercise subject-matter jurisdiction on this basis.

### 2. The <u>Ex parte Young</u> exception does not apply.

In the alternative, the plaintiffs argue that they merely seek prospective, injunctive relief from the state defendants for their official and unlawful conduct, and that they would be willing to forego their demand for damages.[31] In *Ex parte Young* and *Edelman v. Jordan*, the United States Supreme Court "recognized an important exception" to Eleventh Amendment immunity: "the federal court may award an injunction that governs [a state] official's future conduct, but not

---

[29] *Welch v. Tex. Dep't of Highways and Pub. Transp.*, 483 U.S. 468, 478 (1987) ("[T]he Court consistently has required an unequivocal expression that Congress intended to override Eleventh Amendment immunity[, which] . . . must be expressed in unmistakably clear language.").

[30] *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (holding that § 1983 does not override a state's Eleventh Amendment immunity); *Sossamon v. Texas*, 563 U.S. 277, 289 n.6 (2011) ("Moreover, the same phrase in RFRA had been interpreted not to include damages relief against the Federal Government or the States . . . ."); *Oklevueha Native Am. Church of Ha., Inc. v. Holder*, 676 F.3d 829, 840 (9th Cir. 2012) (characterizing the *Sossamon* decision as reasoning that RLUIPA, like the RFRA, does not contain "the unequivocal expression of state consent that our precedents require"); *Cerrato v. San Francisco Cmty. Coll. Dist.*, 26 F.3d 968, 972 (9th Cir. 1994) (holding that the Eleventh Amendment bars §§ 1983, 1985, and 1986 claims against the states); *Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988) (holding that the Los Angeles Community College District was entitled to Eleventh Amendment immunity from the plaintiff's §§ 1981, 1983, and 1985 claims); *Simmons v. Sacramento Cnty. Sup. Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) (dismissing claims because the Superior Courts of the State of California are not persons for § 1983 purposes); *McCardell v. U.S. Dep't of Hous. & Urban Dev.*, 794 F.3d 510, 522 (5th Cir. 2015) (stating that the Fair Housing Act does not make "unmistakably clear" that Congress intended to abrogate the states' Eleventh Amendment immunity").

[31] ECF No. 17 at 13.

one that awards retroactive monetary relief."[32]  But this "exception is narrow."[33]  "It applies only

to prospective relief, does not permit judgments against state officers declaring that they violated

federal law in the past, and has no application in suits against the States and their agencies,

which are barred regardless of the relief sought."[34]

       The plaintiffs' claims against the Eighth Judicial District Court are thus not saved by the

*Ex parte Young* doctrine because it has no application against state agencies.[35]  Nor does that

doctrine save their state-law claims against the state-actor defendants for alleged due-process

violations—which include the judges' alleged misinterpretation and misapplication of state law,

failure to abide by state-law procedural requirements, and violations of the Nevada Constitution

and its civil RICO statute.  The Ninth Circuit has long rejected such obvious attempts to

"transform a state-law issue into a federal one merely by asserting a violation of due process."[36]

And as the Supreme Court clarified in *Pennhurst State Sch. & Hosp. v. Halderman*, "*Young* and

*Edelman* are inapplicable in a suit against state officials on the basis of state law."[37]  Regardless,

the plaintiffs have failed to allege any ongoing or continuous state-official conduct that could be

remedied by injunctive relief, preferring instead to seek declarations, injunctions, and orders

declaring those actors' past conduct to be unlawful.  So I also decline to exercise my jurisdiction

under this exception.

---

[32] *Pennhurst*, 465 U.S. at 103.

[33] *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

[34] *Id.*

[35] *See Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005) ("[T]he Supreme Court announced that *Ex parte Young* allows prospective relief against state officers only to vindicate rights under federal law.").

[36] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[37] *Pennhurst*, 465 U.S. at 106.

**B.     The *Rooker-Feldman* doctrine**

Even setting aside the Eleventh Amendment bar to the majority of the plaintiffs' claims, I would also decline to exercise my jurisdiction under the *Rooker-Feldman* doctrine.  In *Rooker v. Fidelity Trust Co.*[38] and *District of Columbia Court of Appeals v. Feldman*,[39] the Supreme Court announced that federal district courts may not generally exercise subject-matter jurisdiction over "cases brought by state-court losers" challenging "state-court judgments rendered before the district[-]court proceedings commenced."[40]  Albeit a "narrow"[41] limitation, the *Rooker-Feldman* doctrine applies equally to state-law judgments, interlocutory orders, and federal-constitutional claims, including due-process claims and those brought under § 1983.[42]  The Ninth Circuit and Supreme Court have invoked *Rooker-Feldman* to bar federal review of claims arising from a "state court's purportedly erroneous judgment,"[43] involving "attacks on state[-]court proceedings [that] constitute a de facto appeal of the state[-]court judgment,"[44] or seeking "relief that would require the federal court to vacate the final state[-]court judgment."[45]  And it is well settled that

---

[38] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

[39] *D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983).

[40] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[41] *Lance v. Dennis*, 546 U.S. 459, 464 (2006).

[42] *Bianchi v. Rylaardam*, 334 F.3d 895, 900 (9th Cir. 2003); *Worldwide Church of God v. McNair*, 805 F.2d 888, 893 n.4 (9th Cir. 1986); *Doe & Assocs. Law Offs. v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001).

[43] *Henrichs v. Valley View Dev.*, 474 F.3d 609, 616 (9th Cir. 2007).

[44] *Black v. Haselton*, 663 F. App'x 573, 575 (9th Cir. 2016) (unpublished).

[45] *Exxon Mobil Corp.*, 544 U.S. at 284.

federal courts lack jurisdiction to issue writs of mandamus to direct either state officials or state courts in the performance of their duties.[46]

To apply *Rooker-Feldman*, a court must assess whether the allegations advanced in the federal complaint are "inextricably intertwined" with state-court proceedings.[47]  If the "district court must hold that the state court was wrong [to] find in favor of the plaintiff, [then] the issues presented to both courts are inextricably linked."[48]  In *Olson Farms, Inc. v. Barbosa*, for example, the Ninth Circuit held that the *Rooker-Feldman* doctrine precluded a plaintiff's challenge to a state court's jurisdictional findings, insofar as the plaintiff sought "to have the federal courts adjudicate that selfsame jurisdictional claim."[49]  The Ninth Circuit reiterated that reasoning in an unpublished decision, *Black v. Haselton*, upholding a district court's finding that *Rooker-Feldman* barred the plaintiffs' due-process and eminent-domain challenges to various state-court judges' decisions vacating judgments previously entered in the plaintiffs' favor.[50]  As the *Black* court noted, the plaintiff's "argument that the [state court] incorrectly interpreted Oregon law when it determined that their state[-]court claims were no longer justiciable and that the [state court] retained authority to vacate the trial court judgments" constituted "a de facto appeal of the state[-]court judgment."[51]

Like the *Black* and *Olson* plaintiffs, the Hansens and Hanson ask me to correct various "errors" in the state-court proceedings.  The plaintiffs' constitutional claims all appear to stem

---

[46] *Demos v U.S. Dist. Ct.*, 925 F.2d 1160, 1161–62 (9th Cir. 1999); *Pennhurst*, 465 U.S. at 121.

[47] *Feldman*, 460 U.S. at 486–87.

[48] *Napolitano*, 252 F.3d at 1030.

[49] *Olson Farms v. Barbosa*, 134 F.3d 933, 936 (9th Cir. 1998).

[50] *Black*, 663 F. App'x at 575.

[51] *Id.*

10

from their dissatisfaction with three state-court decisions: (1) Hearing Master Brown's dismissal of their eviction suit; (2) Judge Delaney's finding of subject-matter jurisdiction under Nevada's eviction statutes, and subsequent findings in favor of the evicting defendants; and (3) the multiple denials of the plaintiffs' disqualification motions. Their state-law conspiracy claims also seem to request reversal of the state-court judgments, as they complain that the defendants, "in a conspiracy with" some non-parties, "engaged in the taking of property from [the p]laintiffs under circumstances not [sic] amounting to robbery."[52] And in their lengthy request for declaratory judgment and injunctive relief, they ask me to, among other things, "require mandatory continuing education classes for district court judges," find that Judges Bell and Delaney "acted in the clear absence of jurisdiction," hold that "retaliatory evictions violate the First Amendment," and declare that the rental property "be returned to [p]laintiffs as soon as possible due to the fact that it was taken from [p]laintiffs using a VOID temporary write [sic] of restitution."[53]

In sum, the plaintiffs want a do-over of their eviction-related claims, asking me to find that the state-court judges got it wrong, reverse their decisions, and direct those judges to do better in the future. These are textbook attempts to lodge "a de facto appeal from a state[-]court judgment,"[54] and they are barred under *Rooker-Feldman.* So I dismiss those claims that challenge any state-court judgments or interlocutory orders.

---

[52] ECF No. 1 at ¶¶ 258, 261.

[53] *Id.* at ¶¶ 415, 416, 420, 423, 425, 426, 430 (emphasis in original).

[54] *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004).

## C.     Judicial immunity

I also find that the judges (excluding Baucum, who is only sued in her official capacity[55]), are immune from suit in their personal capacity for their conduct here.  "Absolute immunity is generally accorded to judges . . . functioning in their official capacities."[56]  This applies to both civil actions for damages, as well as for equitable relief.[57]  "[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in [her], shall be free to act upon [her] own convictions, without apprehension of personal consequences."[58]  While this immunity "covers only those acts [that] are 'judicial' in nature," a judge "will not be deprived of immunity because the action [s]he took was in error, was done maliciously, or was in excess of [her] authority; rather [s]he will be subject to liability only when [s]he acted in the clear absence of all jurisdiction."[59]  This immunity also extends to court personnel, like hearing masters, whose challenged activities are an "integral part of the judicial process."[60]  Despite this immunity's inflexible nature, "[m]ost judicial mistakes or wrongs are open to correction through ordinary mechanisms of review,

---

[55] As discussed *supra*, the official-capacity claims against Judge Baucum fall with the claims made against the Eighth Judicial District Court.  *See supra* I.A.

[56] *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004) (citing, *inter alia*, *Stump v. Sparkman*, 435 U.S. 349, 364 (1978)).

[57] *See Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Mullis v. Bankr. Ct. for the Dist. of Nev.*, 828 F.2d 1385, 1394 (9th Cir. 1987).

[58] *Bradley v. Fisher*, 13 Wall. 335, 347 (1872).

[59] *O'Neil v. City of Lake Oswego*, 642 F.2d 367, 369 (9th Cir. 1981) (citing *Stump*, 435 U.S. at 360–64).

[60] *Morrison v. Jones*, 607 F.2d 1269, 1273 (9th Cir. 1979); *Sharma v. Stevas*, 790 F.2d 1486, 1488 (9th Cir. 1986); *Olsen*, 363 F.3d at 923 (extending judicial immunity to "agency representatives performing functions analogous to those" of "a judge").

which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability."[61]

The plaintiffs' belief that a judge's misinterpretation of a jurisdiction statute strips her of both subject-matter jurisdiction and immunity[62] is misguided. A judge's exercise of jurisdiction, however erroneous, does not necessarily mean that she acted without jurisdiction, thus opening her to liability. The Ninth Circuit's decision in *Shucker v. Rockwood* guides my analysis.[63] In *Schucker*, a plaintiff tried to evade judicial immunity's absolute bar, arguing that the offending judge was civilly liable for "misinterpret[ing] a statute[,] erroneously exercise[ing] jurisdiction, and thereby act[ing] in excess of his jurisdiction."[64] In upholding dismissal of the plaintiff's claims, the *Schucker* court noted that "[g]rave procedural errors or acts in excess of judicial authority do not deprive a judge of [absolute] immunity."[65] And it found that, even assuming that the judge's "assumption of jurisdiction was 'in excess of his jurisdiction,' the act was not done 'in the clear absence of jurisdiction.'"[66]

So too here. Even were Judge Delaney and Hearing Master Brown incorrect in their assumption of jurisdiction by misinterpreting Nevada's eviction statutes, that does not mean they acted without jurisdiction. And for Judges Bell and Denton, there is no reason that Judge Delaney's acts somehow rob them of their ability to hear a disqualification motion. If anything, an error in Judge Delaney's decisions or her failure to abide by proper court procedure would

---

[61] *Forrester v. White*, 484 U.S. 219, 227 (1988).

[62] *See, e.g.*, ECF No. 1 at ¶ 219.

[63] *Schucker v. Rockwood*, 846 F.2d 1202 (9th Cir. 1988).

[64] *Id.* at 1204.

[65] *Id.*

[66] *Id.*

13

*grant* them jurisdiction to find an error in her decision-making, rendering the matter eminently

suitable for resolution in their courts. I am bound by the *Schucker* holding, and thus find that

these judicial defendants are immune from suit. So I dismiss the plaintiffs' personal-capacity

claims against Judges Delaney, Bell, and Denton, and Hearing Master Brown.

**II.      Claims against attorneys Bohn, Trippiedi, Nikci, and Whitney**

Having found that the plaintiffs are unable to state a claim against the state-government

defendants, I turn to the plaintiffs' constitutional and state-law claims against the eviction-

dispute's opposing counsel for conduct occurring in state court. Attorneys Bohn, Trippiedi,

Nikci, and Whitney argue that they are not state actors and cannot be held liable for any

constitutional claims. They also maintain that they are protected by the litigation privilege from

the plaintiffs' state-law causes of action. The plaintiffs disagree, arguing that the attorneys'

conduct is bound up with the unconstitutional conduct of the state defendants, thus subjecting

them to liability under § 1983.

"Private persons, jointly engaged with state officials in the challenged action, are acting

[] 'under color' of law for purposes of § 1983 actions."[67] And a "private party's joint

participation with state officials in the seizure of disputed property is sufficient to characterize

that party as a 'state actor' for purposes of the Fourteenth Amendment."[68] But "merely resorting

to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or

---

[67] *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1966)).

[68] *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 941 (1982).

a joint actor with a judge."[69]  It is only when private parties "corruptly conspire" with a judge in connection with unlawful conduct that they are "acting under color of state law."[70]

The plaintiffs fail to allege that the attorney defendants did anything more than participate in a state-court action, thus precluding their ability to show that those defendants acted under color of law to deprive the plaintiffs of their constitutional rights.  The *Schucker* decision guides my analysis here, too.  In addition to attempting to hold the judge liable for his jurisdictional decisions, the *Schucker* plaintiff also sought to hold opposing counsel liable for acting in "conspiracy" with the judge.[71]  He argued that counsel "deprive[d] him of his liberty and property" by presenting "jurisdictional arguments" to the judge, persuading the judge to issue orders, and allowing the lawyers to "serve an order to show cause regarding contempt."[72]  But the *Schucker* panel dismissed the suit, reasoning that the invocation of "state legal procedures does not constitute 'joint participation' or 'conspiracy' with state officials sufficient to satisfy section 1983's state[-]action requirement."[73]  Like the *Schucker* plaintiff, the Hansens and Hanson have done nothing more than allege that these attorneys, on behalf of their clients, sought recourse from the courts, filed a lawsuit, "asked for and enforced" a "writ of restitution," and pursued their clients' rights.[74]  I cannot find, under these facts, that they acted under color of law in depriving the plaintiffs of any constitutional protections, so I dismiss their federal claims against these attorneys.

---

[69] *Dennis*, 449 U.S. at 29.

[70] *Id.*

[71] *Schucker*, 846 F.2d at 1204.

[72] *Id.*

[73] *Id.* at 1205 (citing *Lugar*, 457 U.S. at 939 n.21).

[74] ECF No. 1 at ¶¶ 394–96.

With all the plaintiffs' federal claims resolved, I turn to their remaining, state-law claims against the attorneys. Federal courts are courts of limited jurisdiction, but they may exercise supplemental jurisdiction over state-law claims that "are so related to claims in the action" that they form the same case or controversy with the claims over which the court has jurisdiction.[75] Once a plaintiff's federal claims are gone, the court may decline to exercise supplemental jurisdiction over the remaining state-law claims.[76] Because I have dismissed the plaintiffs' federal claims on multiple grounds, I decline to exercise supplemental jurisdiction over their remaining claims against the attorneys, all of which are based on state law. But I dismiss those claims without prejudice, so that the plaintiffs may pursue them in a proper venue.

**III.     Motion and recommendation declaring that the plaintiffs are vexatious litigants**

The attorney defendants move to have the plaintiffs declared vexatious litigants, arguing that their repeated attacks on the qualifications and conduct of various state-court judges and officials are harassing, abusive, and frivolous.[77] After reviewing the plaintiffs' filings in this and other cases, Magistrate Judge Daniel Albregts recommends that I grant the defendants' request and require the plaintiffs to seek leave of court before filing further documents in this suit.[78] The plaintiffs object to this order exclusively on the grounds that they were not served with the initial motion and thus did not have an adequate opportunity to respond to it.[79] Because I grant the defendants' motions to dismiss and close this case, a pre-filing requirement in this case would be

---

[75] 28 U.S.C. § 1367(a).

[76] *Id.* § 1367(c)(4); *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991) ("[I]t is generally preferable for a district court to remand remaining pendent claims to state court.").

[77] ECF No. 18.

[78] ECF No. 22 at 3.

[79] ECF No. 24.

unnecessary. So I reject the magistrate judge's report and recommendation as moot in light of my dismissal, and I deny the motion.

## Conclusion

IT IS THEREFORE ORDERED that the defendants' motions to dismiss **[ECF Nos. 4, 8, 15, 26] are GRANTED**. This court lacks subject-matter jurisdiction to hear the plaintiffs' federal claims against the state-government defendants, the judicial defendants are immune from suit, and the plaintiffs cannot state a federal-law claim against the attorney defendants. Because only state-law claims remain, the plaintiffs' complaint is dismissed for lack of subject-matter jurisdiction. The **Clerk of Court** is directed to **CLOSE THIS CASE.**

IT IS FURTHER ORDERED that the magistrate judge's report and recommendation **[ECF No. 22] is REJECTED as moot** and the defendants' request to declare the plaintiffs vexatious litigants **[ECF No. 18] is DENIED.**

_____
U.S. District Judge Jennifer A. Dorsey
Dated: July 14, 2021